UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Sylvia A. Nelson, | ) | COMPLAINT |
| | ) | |
| Plaintiff, | ) | Civil Action No. _____ |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL |
| Department Stores National | ) | |
| Bank, and Macy's, Inc., | ) | DEMANDED |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

1. This is an action brought by the Plaintiff, Sylvia Nelson, for actual and statutory damages, attorney's fees, and costs for Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq,* (hereinafter "FCRA"). The Plaintiff also seeks compensatory and punitive damages for the Defendants' violations of South Carolina common law set forth herein.

## JURISDICTION AND VENUE

2. This Court has Jurisdiction under 15 U.S.C. §1681p, 15 U.S.C. § 1692k(d), and 28 U.S.C. §1331, §1332, and §1367.

3. Venue is proper in the Columbia Division because the Plaintiff resides in Sumter County and the Defendants transacted business in this division.

## PARTIES

4. The Plaintiff, Sylvia A. Nelson, is a resident and citizen of the State of South Carolina, Sumter County, and is over the age of twenty-one (21) years.

5. Defendant, Department Stores National Bank (hereinafter referred to as "DSNB"), is a National Bank with its principal place of business at 701 East 60th Street North, Sioux Falls, South Dakota, 57104. DSNB offers consumer lending products, including credit cards. The Defendant DSNB was in all respects and at all times relevant herein doing business in the state of South Carolina.

6. Defendant, Macy's, Inc., is believed to be an Ohio corporation with its principal place of business at 7 West Seventh Street, Cincinnati, Ohio 45202. In all respects and at all times relevant herein, Defendant Macy's was doing business in the State of South Carolina.

## FACTUAL ALLEGATIONS

7. In November 2007, the Plaintiff began receiving collection letters from Oxford Management regarding a Macy's account. On or about November 19, 2007, the Plaintiff sent a dispute letter to Oxford Management specifically informing Oxford that she had never opened a charge account with Macy's, that she had not charged any purchases at Macy's, and that the account was not her account. The Plaintiff also informed Oxford that she had lived at her address in Sumter,

South Carolina since 1979; the Plaintiff has never lived in New York.

8. Thereafter, the Plaintiff mailed disputes to Equifax and Experian disputing the reporting of the Macy's account on her credit reports.

9. On February 11, 2008, the Plaintiff sent a letter directly to Macy's informing Macy's that she had lived at her address in Sumter, South Carolina since 1979 and that she had never charged anything at Macy's. The Plaintiff also informed Macy's that she had never opened an account with Macy's.

10. In or around April, 2008, the Plaintiff received a collection letter from Northland Group, Inc., a collection agency collecting on behalf of Department Stores National Bank/Macy's. In response to this letter from Northland, on April 14, 2008, the Plaintiff mailed a letter to Northland stating that she had never opened a Macy's account, never charged any purchases on a Macy's account, and that the account was fraud account.

11. On April 17, 2008, the Plaintiff sent in a subsequent dispute to Equifax again stating she had never opened a Macy's account and disputing the ongoing reporting of the Macy's account on her credit report.

12. On April 24, 2008, Northland sent the Plaintiff another collection letter. In this letter Northland offered the Plaintiff two settlement options, but mentioned nothing about the Plaintiff's dispute of the account as a fraud account.

13. On May 2, 2008, Morris Mazursky, an attorney representing the Plaintiff at the

time, sent a letter to Northland informing Northland that the debt they were attempting to collect was not the Plaintiff's debt, that she did not make the charges with Macy's, and that she was not going to pay the alleged debt. Finally, attorney Mazursky informed Northland to immediately remove this account from the Plaintiff's credit report.

14. On May 9, 2008, Northland sent a letter to attorney Mazursky stating that Northland had forwarded his letter to Macy's for review and that Northland was suspending all collection activity on the account.

15. On or about May 13, 2008, attorney Mazursky sent a certified letter to Macy's enclosing copies of his letters to Sharinn & Lipshie and Northland. Attorney Mazursky specifically informed Macy's that the Plaintiff's identity had been stolen and requested that Macy's have their legal counsel contact him with Macy's response.

16. On June 3, 2008, Macy's responded that they could not review the matter further unless the Plaintiff signed an Authorization to Release Credit Information. Macy's also stated that unless the specified form was received within 14 days, Macy's would assume that the Plaintiff no longer wished for the matter to be investigated and the file would be closed.

17. On or about June 9, 2008, the Plaintiff received a collection letter from FMS, Inc., a collection agency collecting on behalf of Department Stores National

Bank/Macy's. In this letter, FMS stated that Department Stores National Bank/Macy's had agreed to settle the account for 55% of the outstanding balance.

18. Despite the Plaintiff's disputes to the Defendants, as well as those of her attorney, the Defendants continued to report the disputed account as belonging to the Plaintiff.

19. The Plaintiff's July 20, 2008 Equifax credit report shows that Defendants continued to report a Macy's account as belonging to the Plaintiff and as being charged off.

20. On or about July 29, 2008, the Plaintiff sent a letter to FMS, Inc., informing them that the Macy's account was not her account and telling them that she was represented by Morris Mazursky.

21. On August 4, 2008, the Plaintiff sent another dispute to Equifax stating that the Macy's account was not her account.

22. On or about August 26, 2008, the Plaintiff received her Experian credit report which showed that the Macy's account was still being reported as belonging to the Plaintiff and as being a charged off account.

23. The Plaintiff's August 26, 2008, Equifax report also continued to show that the Defendants were continuing to report a Macy's account as belonging to the Plaintiff and as being charged off.

24. Likewise the Plaintiff's August 27, 2008, Trans Union credit report showed that the Defendants were reporting a Macy's account as belonging to the Plaintiff and as being charged off.

25. On or about September 12, 2008, the Plaintiff sent another letter to Defendant Macy's stating that the account was not her account and requesting that the account be immediately removed from her credit report. That same day the Plaintiff also sent in disputes to Trans Union, Equifax, and Experian which specifically included the Plaintiff's dispute regarding the reporting of the Macy's account on her credit file.

26. On or about September 22, 2008, the Plaintiff received a letter from Experian stating that the matter had already been investigated and that the original creditor, the Defendants herein, had verified the reporting of the account.

27. On or about October 6, 2008, Defendant Macy's sent a letter to Plaintiff's attorney, Morris Mazursky, stating that the Macy's account was going to continue to be reported on the Plaintiff's credit reports unless payment for the merchandise in the amount of $1,201.25 was received. The letter then stated that if the Plaintiff still believed that the account was not her account, then he should contact the fraud department.

28. On October 20, 2008, the Plaintiff was notified by Equifax that the Defendants had verified the account as belonging to the Plaintiff and that it would continue

to be reported on her credit report.

29. On November 4, 2008, a certified letter was sent to Defendant Macy's Fraud Claims Department again informing them that the Plaintiff did not open a Macy's account in New York, that the Plaintiff had never lived in New York, and that the account was a fraud account. Included with this letter was a copy of the Plaintiff's drivers license as well as a signed statement by the Plaintiff confirming that the information in the letter to Defendant Macy's was true.

30. On or about January 10, 2009, the Plaintiff received a collection letter from Capital Management Services, a collection agency collecting on behalf of the Defendants. In this letter, Capital Management Services that they had been engaged by the Defendants to resolve a delinquent debt.

31. To date, despite repeated notice of the Plaintiff's disputes of the Macy's account and the allegation of fraud, the Defendants continue to send the Macy's account to third-party collection agencies for collection and continue to report the account on the Plaintiff's credit reports as belonging to her, being charged off, and having a balance of over $1,800.

## COUNT ONE
## FAIR CREDIT REPORTING ACT

32. The Plaintiff adopts the averments and allegations of paragraphs 7 through 31 hereinbefore as if fully set forth herein.

33. Defendants violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the information said Defendants had provided to a consumer reporting agency.

34. Defendants violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

35. Defendants violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by Defendants to a consumer reporting agency.

36. Defendants violated 15 U.S.C. §1681s-2(b)(2) by failing to complete all investigations, reviews, and reports required under §1681s-2(b)(1) within 30 days.

37. Defendants violated 15 U.S.C. §1681s-2(b)(1)(c) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agency.

38. Defendants violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Defendants' account was inaccurate, incomplete, false, and misleading.

39. As a result of the Defendants' violations set forth above, the Plaintiff was denied credit, suffered harm to her credit reputation, was forced to endure

numerous collection letters and calls from collection agencies collecting on behalf of the Defendants, was made to suffer humiliation, anxiety, loss of sleep, anger, fright, physical pain and illness and mental anguish, as well as damages for attorney fees, certified mail expenses, and other out of pocket losses.

## COUNT TWO
## FAIR CREDIT REPORTING ACT

40. The Plaintiff adopts the averments and allegations of paragraphs 7 through 39 hereinbefore as if fully set forth herein.

41. Defendants willfully violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the information said Defendants had provided to a consumer reporting agency.

42. Defendants willfully violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

43. Defendants willfully violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by Defendants to a consumer reporting agency.

44. Defendants willfully violated 15 U.S.C. §1681s-2(b)(2) by failing to complete all investigations, reviews, and reports required under §1681s-2(b)(1) within

30 days.

45. Defendants willfully violated 15 U.S.C. §1681s-2(b)(1)(c) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agency.

46. Defendants willfully violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Defendants' account was inaccurate, incomplete, false, and misleading.

47. As a result of the Defendants' violations set forth above, the Plaintiff was denied credit, suffered harm to her credit reputation, was forced to endure numerous collection letters and calls from collection agencies collecting on behalf of the Defendants, was made to suffer humiliation, anxiety, loss of sleep, anger, fright, physical pain and illness and mental anguish, as well as damages for attorney fees, certified mail expenses, and other out of pocket losses.

## COUNT THREE
## DEFAMATION, LIBEL AND SLANDER

48. The Plaintiff adopts the averments and allegations of paragraphs 7 through 47 hereinbefore as if more fully set forth herein.

49. Defendants willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding the Plaintiff to third

parties and the public at large. Said statements subjected the Plaintiff to the denial of credit by third parties and harmed the Plaintiff's reputation.

50. Said false and defamatory statements have harmed the reputation of the Plaintiff and/or deterred third persons from associating with the Plaintiff.

51. Defendants communicated to credit reporting agencies and other third parties, false information concerning the Plaintiff, disseminating and imputing false and misleading credit worthiness information concerning the Plaintiff.

52. Said communications were made to national credit bureaus, to their agents and employees, to third party collection agencies, and to the public at large.

53. Said communications were false in that Plaintiff was not indebted to the Defendants and Plaintiff did not owe any balance on said fraud account.

54. At the time said communications were made, the Defendants knew, or should have known, the falsity of the communications or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully and maliciously communicated the falsity.

55. As a result of the intentional communications to the third parties of the false information, the Plaintiff was caused to suffer injury to her reputation in the eyes of her community and the public, and/or was subjected to ridicule.

56. Said communications were oral and written.

57. As a proximate consequence of said defamation, libel and slander, the Plaintiff

was caused to have negative credit reports, held up to public ridicule or shame, denied credit, and made to suffer humiliation, anxiety, loss of sleep, anger, fright, physical pain and illness and mental anguish for which she claims compensatory and punitive damages.

## COUNT FOUR
## NEGLIGENT TRAINING AND SUPERVISION

58. The Plaintiff adopts the averments and allegations of paragraphs 7 through 57 hereinbefore as if fully set forth herein.

59. The Defendants knew or should have known of its inadequate training and supervision. If Defendants had properly trained and supervised its employees, agents, and assigns, the conduct set forth herein which was directed at and visited upon the Plaintiff would not have occurred.

60. The Defendants knew or should have known that the conduct of its employees, agents, and/or assigns was improper, and/or in violation of the Fair Credit Reporting Act.

61. The Defendants negligently failed to train and supervise its employees, agents, and/or assigns in order to prevent said improper conduct.

62. As a result of the Defendants' negligence, the Plaintiff suffered credit denials, damage to her credit reputation, out of pockets expenses, attorney fees, humiliation, loss of sleep, anxiety, nervousness, physical sickness, physical

and mental suffering, pain, and anguish.

## COUNT FIVE
## RECKLESS AND WANTON TRAINING AND SUPERVISION

63. The Plaintiff adopts the averments and allegations of paragraphs 7 through 62 hereinbefore as if fully set forth herein.

64. The Defendants knew or should have known of its inadequate training and supervision. If Defendants had properly trained and supervised its employees, agents, and assigns, the conduct set forth herein which was directed at and visited upon the Plaintiff would not have occurred.

65. The Defendants knew or should have known that the conduct of its employees, agents, and/or assigns was improper.

66. The Defendants recklessly and wantonly failed to train and supervise its employees, agents, and/or assigns in order to prevent said improper conduct.

67. As a result of the Defendants' recklessness and wantonness, the Plaintiff suffered credit denials, damage to her credit reputation, out of pockets expenses, attorney fees, humiliation, loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain, and anguish.

### AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against the Defendants, Department Stores National Bank and Macy's, Inc., for the

following:

    A.    Actual damages from Defendants pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1).

    B.    Punitive damages from Defendants pursuant to 15 U.S.C. §1681n(a)(2);

    C.    Costs and reasonable attorney's fees from Defendants pursuant to 15 U.S.C. §1681n(a)(3);

    D.    Compensatory and punitive damages in excess of the jurisdictional requirements of this Court, from Defendants on Plaintiff's State law claims in an amount to be determined by a jury; and

    E.    For such other and further relief as the Court may deem just and proper.

    /s/ Penny Hays Cauley
    Penny Hays Cauley, Fed. ID No. 10323
    Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
549 West Evans Street, Suite E
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ Penny Hays Cauley
Penny Hays Cauley

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL - RESTRICTED DELIVERY:**
Department Stores National Bank
c/o Ken Stork, President and CEO
701 East 60th Street North
Sioux Falls, SD 57104

Macy's, Inc.
C/o Terry J. Lundgren, President and CEO
7 West Seventh Street
Cincinnati, OH 45202